**Peggy M. CRITTENDEN, Appellant,**

v.

**M. Fern COX, Appellee.**

**No. 4726.**

Court of Civil Appeals of Texas, Eastland.

July 29, 1974.

Rehearing Denied Aug. 19, 1974.

William L. Kerr, Kerr, Fitz-Gerald & Kerr, Midland, for appellant.

Jones & Milstead, Big Spring, for appellee.

PER CURIAM.

This is an election contest. M. Fern Cox and Peggy M. Crittenden were the only candidates for the Democratic nomination for the office of District Clerk of Howard County, Texas. After the primary election on May 4, 1974, and the canvass of the returns on May 7, 1974, by the Howard County Democratic Executive Committee, Crittenden, having received a one vote majority, was certified to be the nominee of the Democratic Party. Upon petition of Cox, the Howard County Democratic Executive Committee ordered and conducted a recount of the ballots for the office of District Clerk of Howard County. The recount established different totals for the candidates but affirmed a one vote majority for Crittenden and she was certified again on May 13, 1974, as the Democratic nominee.

On May 17, 1974, the Chief Deputy County Clerk of Howard County discovered ballot number 701, with the stub detached, among a stack of applications for absentee ballots which had accumulated in connection with the balloting held on May 4, 1974. The ballot included a vote for Cox. On May 22, 1974, Cox instituted this proceeding seeking that ballot number 701 be counted and added to his total vote previously canvassed. Trial before the court on May 31, 1974, the day before the second primary, resulted in a determination that the ballot had not been previously counted and the election result was a tie. The court ordered a special runoff election to be conducted by the Democratic Executive Committee of Howard County. Crittenden appeals.

The contention of Crittenden is that the District Court of Howard County acquired no jurisdiction and if jurisdiction were acquired, there was no evidence or insufficient evidence to sustain the holding of the court. She further urges that the District Court was not authorized to order another "second primary election", there being no such statutory authority. Also since the day following the court's order was the date for the second primary the issue was moot.

Article 13.30, Election Code, Vernon's Ann.Texas Civ.St., provides in part:

"Any candidate desiring to contest the result of any primary election in which he was a candidate shall file his suit in the district court within ten days from the date of canvass of the results of the election by the state executive committee in the case of a state-wide office or a district office in a district which includes territory situated in more than one county, *and within ten days from the date of canvass by the county executive committee in the case of a county or precinct office or a district office in a district which consists of only one county or part of one county.*" (Emphasis ours.)

The office of District Clerk of Howard County is a one county office. Cox filed his petition contesting the election on May 22. The county executive committee canvassed the result of the election on May 7. On the same day Cox filed his request for recount with the committee and the results were announced May 13. Therefore, if the words "date of canvass" in Article 13.30 supra, include the canvass of a recount, this suit was timely filed. However, if those words are restricted to only the first and original canvass, the suit was not timely filed.

Article 9.38a, Election Code, V.A.T.S., provides for the recount of paper ballots,

the type ballots used in the election in the present case, and reads in part as follows:

"Subdivision 1 . . (a) *A candidate for nomination* or election to any public office . . . may obtain a recount of the votes cast for the office on manually counted paper ballots, in the manner outlined in this section: (Emphasis ours.) (1) if the difference in the number of votes received by him and the next highest candidate above him is less than five percent of the number of votes received by such next highest candidate, as shown by the returns of the election officers, and the candidate seeking the recount would gain the election or nomination or a place on a runoff election ballot if the recount showed him to have received a greater number of votes than that opponent. . ."

"Subdivision 2 . . (a) A candidate desiring a recount must file a written, signed application with the presiding officer of the body which canvasses the returns of the election and makes the official declaration of the result (hereinafter called 'canvassing board'). The application may be presented for filing at any time after the returns from all election precincts involved have been received from the presiding judges of the election, and it must be presented not later than the second day after the official declaration of the result. . ."

"Subdivision 8 . . (c) After the recount is completed, the committee shall make out its report and deliver it to the presiding officer of the canvassing board . . ."

"Subdivision 9 . . . As soon as practicable, and not later than two days after receiving all the committee reports, the presiding officer of the canvassing board shall convene the board, which at such meeting *shall declare the result of the election for the office involved on the basis of the revised returns.* The board and its presiding officer shall take such further actions as may be necessary

in the same manner as for an original canvass." (Emphasis ours.)

"Subdivision 12 . . . Nothing in this section shall be deemed to prevent the filing of an election contest in a district court or to prevent the ordering of a recount in an election contest or to compel the court hearing the election contest to accept a recount under this section as conclusive of the results of the election . . ."

Crittenden contends under Subdivision 12 of Article 9.38a, supra, that a recount must reflect a change in the results previously announced before additional time to file a contest petition is permitted. She urges the recount did not change the results, Cox did not file his election contest within ten days of the original canvass, therefore, under Article 13.30, supra, he is too late, and the district court is without jurisdiction. We disagree.

■ Both Article 9.38a, supra, and Article 13.30, supra, were amended by the 60th Legislature. The legislature by the provisions in Article 9.38a provided for a recount and a canvass of the revised returns. At the same time the language of Article 13.30, modifying the time within which a contest of the result of any primary election must be filed was amended from "date of certification" to "date of canvass". By applying the rules of construction of statutes as set forth in Article 5429b–2, V.A. T.S., we must conclude that Article 9.38a, supra, required the filing of the election contest within ten days after the canvass of the recount. Otherwise, we would have the illogical conclusion that any candidate, be he winner or loser, would have to file an election contest within ten days of the original canvass regardless of the results of any recount. Cox complied with the requirements for the recount and for the filing of an election contest. We hold the district court had jurisdiction.

■ Crittenden urges there is no evidence that ballot 701 was not counted. In

considering this point we are required to review the evidence in support of the finding and consider only the evidence and inferences which support the finding and reject the evidence and inferences to the contrary. Curry v. Curry, 153 Tex. 421, 270 S.W.2d 208 (1954); Self v. Thornton, 343 S.W.2d 485 (Tex.Civ.App.—Texarkana 1960).

The uncontradicted evidence is that ballot 701 was used as an absentee ballot. The record reflects that the county clerk had received and voted three hundred ninety-nine ballots, counting those cast in person and those received by mail. There were four hundred and eight applications for ballots and nine non-voted applications. The final poll list, prepared by the absentee box election committee contained three hundred ninety-nine names, the same number as shown by the county clerk's records.

After the count by the absentee box committee, the locked ballot boxes were placed in the basement of the county clerk's office. The stack of absentee application forms were placed on top of a file cabinet in the county clerk's office on the ground floor of the courthouse.

Significantly, the recount committee met in the basement under the county clerk's office and the record reflects that this committee had nothing to do with the stack of applications for absentee ballots. Such applications were not in the basement where the recount took place. This committee counted only three hundred ninety-eight ballots in the absentee box. Four days later the deputy county clerk found ballot 701 while going through the stack of application forms for absentee ballots.

We hold that this record contains some evidence to support the trial court's finding that ballot 701 was not counted.

Crittenden also complains there is insufficient evidence that ballot 701 was not counted. We have carefully considered the entire record and hold to the contrary. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

██ Finally, Crittenden challenges the authority of the district court to order another primary runoff election. She also contends that since the designated date for holding a second primary election has now passed, the issue is moot.

Article 13.03, supra, designates the first Saturday in May as the general primary election day and states further in part:

"If at the general primary election for any political party, no candidate becomes the nominee for any office under this Article, a second primary election *shall be held by such political party on the first Saturday in June succeeding such general primary election*, and only the name of the two (2) candidates who received the highest number of votes for any office for which nomination was made at the general election shall be placed on the official ballot as candidates for such office at such second primary . . ." (Emphasis ours.)

There is no other authority in the election code for the holding of a subsequent primary election nor is a court authorized to order one. Nesbitt v. Coburn, 143 S.W.2d 229 (Tex.Civ.App.—Waco 1940, no writ history); Scruggs v. Perkins, 233 S.W.2d 913 (Tex.Civ.App.—San Antonio 1950, no writ history).

Article 9.15, Election Code, V.A.T.S., does empower a court to order another general election under certain conditions but that must be distinguished from the statutes dealing with primary elections. It should also be noted that in the case at bar we are not concerned with a nomination or election to fill an unexpired term nor a circumstance in which a nominee has declined the nomination or has died after nomination. Articles 13.12a and 13.56, Election Code, V.A.T.S.

Article 13.07, Election Code, V.A.T.S., provides in part:

". . . if no candidate received a majority of the votes cast for the candidates for the office for which he is a

candidate, the County Executive Committee, after canvassing the results of such primary as provided by law *shall cause the names of the two (2) candidates receiving the highest number of votes to be placed on the ballot to be voted upon at the second primary at the time and in the manner provided by law for such second primary . . ."* (Emphasis ours.)

Article 13.26, Election Code, V.A.T.S., states:

"If upon a canvass of the returns of the first primary election, it appears that for a county or precinct office, *the two (2) highest candidates have received an equal number of votes, then the names of such two (2) highest candidates shall be certified for places on the ballot of the second primary, unless the said candidates shall agree in writing to cast lots for such nomination . . ."* (Emphasis ours.)

Had Crittenden and Cox tied in the balloting at the first primary, under the statutes, their names would have been placed on the ballot for the second primary held on the first Saturday in June in the absence of an agreement by them to cast lots. The parties made no such agreement and now after a judicial declaration of a tie, the authorized date for holding a second primary has passed.

The obvious intent and aim of the election code is the timely and orderly nomination or designation of political party candidates and the election of office holders. "The holding of an election and the election procedure are part of the political powers of the state and, except as provided by statute, the judiciary has no control over them." 21 Tex.Jur.2d at page 220.

The statute applicable to the case at bar requires a runoff at the designated second primary date with the contestants' names on the printed ballot. There is no other statutory authority to resolve a tie vote resulting at a first primary election other than an agreement of the candidates. The second primary date has passed, therefore the cause before this court becomes moot. McGee v. McKaskle, 499 S.W.2d 755 (Tex.Civ.App.—Houston 1973, no writ history; Benavides v. Orth, 120 S.W.2d 99 (Tex.Civ.App.—San Antonio 1938, no writ history); Caldwell v. Shearer, 158 S.W.2d 850 (Tex.Civ.App.—San Antonio 1942); State of Texas ex rel. Noble Johnson v. Otter, 379 S.W.2d 100 (Tex.Civ.App.—Houston 1964).

Our Supreme Court while considering an election contest in Polk v. Davidson et al., 145 Tex. 200, 196 S.W.2d 632 (1946), stated:

"A case becomes moot 'when any right which might be determined by the judicial tribunal could not be effectuated in the manner provided by law.' Sterling v. Ferguson et al., 122 Tex. 122, 142, 53 S.W.2d 753, 761."

We cannot order another primary election nor can we order the candidates to cast lots. Since there is now no right that can be effectuated in the manner provided by law, the cause is moot.

Accordingly, the judgment heretofore entered herein will be set aside, and judgment now entered dismissing the election contest and the proceedings herein, at the cost of Cox.

## ON APPELLEE'S MOTION FOR RE-HEARING

Cox's contention is that the first primary election resulted in a tie. The statutes require that a tie in the first primary be resolved by balloting at the second primary. That date has passed. This cause is moot.

Cox's motion for rehearing is overruled.